Stephanie R. Tatar, Esq. (SBN: 237792)
**TATAR LAW FIRM, APC**
3500 West Olive Ave., Suite 300
Burbank, CA 91505
Telephone: (323) 744-1146
Stephanie@thetatarlawfirm.com

Attorneys for PLAINTIFFS,
**MARIA RODRIGUEZ-LLERENAS & DANIELLA DURAN**

### IN THE UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **MARIA RODRIGUEZ-LLERENAS and DANIELLA DURAN**<br><br>　　　**Plaintiffs,**<br><br>**v.**<br><br>**WELLS FARGO BANK, N.A.,**<br><br>　　**Defendant.** | Civil Action No.　8:24-cv-595<br><br>**COMPLAINT FOR VIOLATION OF ELECTRONIC FUNDS TRANSFERS ACT AND CALIFORNIA UNFAIR COMPETITION LAW**<br>**CAL. BUS. & PROF. CODE § 17200, ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

NOW COME the Plaintiffs, MARIA RODRIGUEZ-LLERENAS and DANIELLA DURAN, by and through their attorneys, Tatar Law Firm, APC, and for their complaint against the Defendant, WELLS FARGO BANK, N.A., Plaintiffs state as follows:

1

## I.   PRELIMINARY STATEMENT

1.    This is an action for all damages allowable under the Electronic Funds Transfer Act, 15 U.S.C. §1693, et seq, breach of contract and negligence.

## II.   JURISDICTION & VENUE

2.    Jurisdiction arises under the EFTA, 15 U.S.C. §1693m.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## III.   PARTIES

4.    Plaintiff, MARIA RODRIGUEZ-LLERENAS, is an individual who was at all relevant times residing in the City of Westminster, County of Orange, State of California.

5.    Plaintiff, DANIELLA DURAN, is an individual who was at all relevant times residing in the City of Westminster, County of Orange, State of California. (Where not referred to specifically, the plaintiffs will be referred to collectively as "Plaintiffs").

6.    Plaintiffs are mother (Maria) and daughter (Daniella).

7.    At all relevant times, Plaintiffs were each a "consumer" as that term is defined by 15 U.S.C. §1693a(6).

8.    At all relevant times, Plaintiff, MARIA RODRIGUEZ-LLERENAS, had a personal savings account in their name with Defendant (hereinafter, "Maria's Personal Account").

COMPLAINT AND JURY DEMAND

9.      At all relevant times, Plaintiff, MARIA RODRIGUEZ-LLERENAS, had a business account in her name with Defendant under the name Maria Guadalupe Rodriguez d/b/a DMR Property Services (hereinafter, "Maria's Business Account").

10.      At all relevant times, Plaintiff, DANIELLA DURAN, had a personal asset account in their name with Defendant (hereinafter, "Daniella's Savings Account").

11.      At all relevant times, Maria's Personal Account and Daniella's Savings Account were established to hold funds used primarily for Plaintiffs' personal use and/or household expenditures.

12.      At all relevant times, Maria's Personal Account and Daniella's Savings Account were each an "account" as that term is defined by 15 U.S.C. §1693a(2).

13.      WELLS FARGO BANK, N.A., (hereinafter, "Defendant") is a business entity that conducts business within the State of California. Defendant's principal place of business is located in the State of California.

14.      At all relevant times, Defendant was a bank that held Maria's Personal Account and Daniella's Savings Account as well as Maria's Business Account.

15.      At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

16.      At all relevant times, Defendant was a "financial institution" as that term is defined by 15 U.S.C. §1693a(9).

COMPLAINT AND JURY DEMAND

17.    At all relevant times, an unknown third party received funds Plaintiffs' Wells Fargo Account, which were transferred to this person or persons via an electronic terminal, telephonic instruction or computer or magnetic tape after an unknown third party instructed Defendant to transfer funds to an unknown recipient from Plaintiffs' Wells Fargo Account.

## IV.  ALLEGATIONS

## COUNT I: VIOLATIONS OF THE EFTA

18.    On or about December 26, 2023, $19,500.00 was debited from Maria's Personal Account and transferred to Maria's Business Account.

19.    On or about December 26, 2023, $19,498.00 was debited from Maria's Business and transferred via Defendant's Direct Pay system to an unknown third party.

20.    On or about December 27, 2023, $11,800.00 was debited from Maria's Personal Account and transferred to Maria's Business Account.

21.    On or about December 27, 2023, $19,498.00 was debited from Maria's Business and transferred via Defendant's Direct Pay system to an unknown third party.

22.    On or about December 28, 2023, $1,000.00 was debited from Daniella's Savings Account and transferred to Maria's Business Account.

23.    On or about December 28, 2023, $7,798.00 was debited from Maria's Business and transferred via Defendant's Direct Pay system to an unknown third party.

24.    Plaintiffs did not participate in any of these transactions.

25.    Prior to December 26, 2023, Plaintiffs were not aware of the circumstances relating to the debit of funds from their accounts by an unknown third party.

COMPLAINT AND JURY DEMAND

26.     Plaintiffs did not provide any person with consent to debit funds from any of their accounts on December 26, 27 and 28, 2023.

27.     Plaintiffs did not provide Defendant with consent for any person to debit funds from any of their accounts on December 26, 27 and 28, 2023.

28.     Prior to December 26, 2023, MARIA RODRIGUEZ-LLERENAS was not aware that $31,300.00 was to be debited from Maria's Personal Account by any third party, as delineated above.

29.     Prior to December 26, 2023, DANIELLA DURAN was not aware that $1,000.00 was to be debited from Daniella's Personal Account by any third party, as delineated above.

30.     On December 29, 2023, Plaintiffs became aware of attempts by an unknown third party to transfer funds within Maria's Personal Account and Daniella's Personal Account, and then transfer funds out of Maria's Business Account.

31.     On December 29, 2023, Plaintiffs contacted Defendant to notify Defendant of the transfers.

32.     December 29, 2023, Plaintiffs provided Defendant with notice that they disputed the debit of funds by these unknown third parties relative to Maria's Personal Account and Daniella's Personal Account.

33.     On December 29, 2023, Plaintiffs provided Defendant with information to allow Defendant to identity each Plaintiffs Account, such as:

COMPLAINT AND JURY DEMAND

a.      Plaintiffs' Account numbers;

b.      Plaintiffs' personal identifying information;

c.      The name under which Plaintiffs' Accounts were registered;

d.      The date of the transaction which Plaintiffs disputed relative to Plaintiffs' Accounts;

e.      The amount of the transaction which Plaintiffs disputed relative to Plaintiffs' Accounts; and,

34.    On December 29, 2023, Plaintiffs provided Defendant with notice that the debit of funds by an unknown third party relative to Maria's Personal Account and Daniella's Savings Account and placing it into Maria's Business Account on December 26, 27 and 28, 2023, were each an unauthorized electronic transfer of funds from Plaintiffs' Wells Fargo Account.

35.    On December 29, 2023, Plaintiffs provided Defendant with notice of the circumstances as to why Plaintiff believed the debit of funds by the unknown third parties on December 26, 27 and 28, 2023, was carried out in error, such as:

a.      Plaintiffs never authorized the debit of funds from Plaintiffs' Accounts;

b.      Plaintiffs never provided any other person or entity with permission, consent or authority to debit funds from Plaintiffs' Accounts;

c.      Said transactions were entirely inconsistent with Plaintiffs' previous account history.

d.      On November 23, 2023, just one month before the fraud, Plaintiff, MARIA RODRIGUEZ-LLERENAS noticed Wells Fargo Direct Pay services on her business account, and advised Defendant that she never ordered such service and demanded that it be removed, and on

COMPLAINT AND JURY DEMAND

November 30, 2023, Defendant removed the Direct Pay services from her account consistent with her instructions, but was then and there on notice that Plaintiffs' accounts may have been compromised.

36.    Plaintiff MARIA RODRIGUEZ-LLERENAS received no benefit from the transfer of funds from Maria's Personal Account to Maria's Business Account because without the unauthorized and unknown transfer of money from her Personal Account to her Business Account, there would not have been sufficient funds in her Business Account to fund the unauthorized and unknown transfers that went out of Maria's Business Account.

37.    Plaintiff DANIELLA DURAN received no benefit from the transfer of funds from Daniella's Savings Account to Maria's Business Account because Daniella has no personal stake or ownership in her mother's business.

38.    To date, Defendant failed to conduct any investigation relative to the error complained of by Plaintiff within ten (10) days of the receipt of Plaintiff's dispute in violation of 15 U.S.C. §1693f(a).

39.    On January 4, 2024, Defendant provided a response to Plaintiff's dispute stating that the transactions were made through an on-line secured banking session by Plaintiffs or someone with Plaintiffs' authority.

40.    Plaintiffs did not engage in any on-line secured banking session on December 26, 27, or 28, 2024, and nor did Plaintiffs authorize any person to engage in an on-line secured banking session on their behalf.

COMPLAINT AND JURY DEMAND

41.    Defendant's investigation was not made in good faith and Defendant did not have a reasonable basis for denying the return of Plaintiffs' funds in violation of 15 U.S.C. §1693f(e)(1).

42.    Defendant knowingly and willfully concluded that Plaintiffs' accounts were not in error when such a conclusion could not have been reasonably drawn from the evidence available to Defendant at the time of its investigation in violation of 15 U.S.C. §1693f(e)(2).

43.    Defendant violated the Electronic Funds Transfers Act by holding Plaintiffs liable for in excess of $50 on the aforementioned unauthorized transfers and has failed to refund the money into their account in violation of 15 U.S.C. §1693g(a).

44.    Presently, Plaintiffs remain without the $32,300.00 debited from Maria's Personal Account and Daniella's Savings Account.

45.    As a result of Defendant's violations as aforesaid, Plaintiffs have suffered, and continue to suffer mental anguish and emotional distress and out-of-pocket damages.

WHEREFORE, Plaintiffs, MARIA RODRIGUEZ and DANIELLA DURAN, by and through their attorneys, respectfully pray for Judgment to be entered in favor of Plaintiffs and against Defendant as follows:

a.    All actual compensatory damages suffered;

b.    Statutory damages allowable under 15 U.S.C. §1693m(a)(2)(A);

c.    Plaintiffs' attorneys' fees and costs; and,

d.    Any other relief deemed appropriate by this Honorable Court.

## COUNT II: BREACH OF CONTRACT

46.    Plaintiff, MARIA RODRIGUEZ-LLERENAS, re-alleges and incorporates by reference paragraphs 1-45 in this complaint as though fully set forth herein.

47.    Plaintiff entered into a valid and binding agreement governing Maria's Business Account in order to conduct business under the name DMR Property Services, a sole proprietorship.

48.    The Agreement states that "You agree that we will follow a commercial reasonable security procedure of our choice to verify the authenticity of an instruction we receive to send a funds transfer from your account.  …If we offer, but you decline, an optional security procedure that is commercially reasonable, then you agree that the security procedure chosen to verify the payment order is commercially reasonable for your transaction.  Exhibit A, Pg. 19.

49.    Plaintiff and Defendant never agreed on a security procedure for the transfers of funds.

50.    On November 23, 2023, Plaintiff, after noticing the inclusion of Wells Fargo Direct Pay services on Maria's Business Account, Plaintiff, contacted Defendant to advise she did not place Wells Fargo Direct Pay services on her account and did not wish to utilize those services.

51.     On November 30, 2023, Defendant advised Plaintiff that it would remove Wells Fargo Direct Pay services from Maria's Business Account.

52.     Plaintiff never requested that Wells Fargo Direct Pay services be re-added Maria's Business Account.

53.     Defendant nonetheless, allowed a third party access to Maria's Business Account and allowed three (3) separate transactions totaling $37,797 to be sent out of said account via Wells Fargo Direct Pay.

54.     On December 29, 2023, Defendant recovered $5,998 in unauthorized transactions and replaced the funds into Maria's Business Account.

55.     On January 2, 2024, Defendant recovered $2,000 in unauthorized transactions and replaced the funds into Maria's Business Account

56.     To date, Plaintiff MARIA RODRIGUEZ-LLERENAS doing business as DMR Property Services has lost $29,799.00 after an unknown person with whom Plaintiffs had no relationship was able to utilize Wells Fargo Direct Pay services on Maria's Business Account without her permission.

57.     Defendant breached its obligations under the contract.

58.     Plaintiff has performed her obligations under the contract.

59.     Defendant's breach caused Plaintiff to suffer a minimum of $29,799.00 in actual damages.

COMPLAINT AND JURY DEMAND

WHEREFORE, Plaintiffs, MARIA RODRIGUEZ-LLERENAS by and through her attorneys, respectfully pray for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

      a.      All actual compensatory damages suffered;

      b.      Any other relief deemed appropriate by this Honorable Court.

## COUNT III: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE § 17200, ET SEQ. (UCL)

60.    Plaintiff, MARIA RODRIGUEZ-LLERENAS, a re-alleges and incorporates by reference paragraphs 1-59 in this complaint as though fully set forth herein.

61.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.

62.    Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.

63.    A plaintiff is required to provide evidence of a causal connection between a Defendant's business practices and the alleged harm--that is, evidence that the Defendant's conduct caused or was likely to cause substantial injury.

64.    Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

COMPLAINT AND JURY DEMAND

## Unlawful

65.    California Business & Professions Code §17200 prohibits any "unlawful ... business act or practice." An unlawful business act or practice is an act or practice that is both undertaken pursuant to business activity and also forbidden by law.

66.    Any business act or practice that is unlawful, in the sense that it violates a specific statute, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made, may be enjoined under the UCL.

67.    Defendant's unlawful business practices directly harmed Plaintiff since Plaintiff has suffered monetary damages due to said conduct.

68.    This illegal conduct exacerbated the hardship currently being suffered by Plaintiff since Plaintiff is already experiencing financial hardships as a result of the current economic downturn.

69.    Thus, Defendant's conduct has violated the "unlawful" prong of California Business & Professions Code § 17200.

## Unfair

70.    California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."

71.    Defendant's actions as described above were contrary to public policy and generally recognized standards of business and industry practices.

72.    Defendant engaged in the following unfair conduct in violation of Sec. 17200:

a.  As discussed above, Defendant has failed to prevent withdrawal of funds by someone other than Plaintiffs without written or oral authorization for that person to do so.

b.  Defendant failed to return Plaintiffs' tax return funds when Plaintiff notified it of the unauthorized access to her bank card.

c.  Defendant failed to maintain and follow procedures to investigate a consumer's claims of debit card theft and identity theft

d.  When notified of the identity theft, Defendant did not conduct an investigation into Plaintiffs' allegations, and simply denied Plaintiffs' claim and refused to return Plaintiffs' money.

e.  Upon information and belief, Defendant fails to maintain adequate procedures related to the investigation of claims of identity theft.

f.  Upon information and belief, Defendant maintained policies and procedures regarding identity theft that routinely deny legitimate disputes.

g.  Defendant's failure to reopen its investigation and review upon request and upon being confronted with undeniable proof that Plaintiff had been the victim of identity theft shows a pattern and practice of rejecting any request for further investigation and is patently unfair in violation of the statute.

73.  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL

in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

74.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

75.   Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

76.   In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

77.   Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff since Plaintiff has suffered injury in fact due to Defendant's failure to prevent withdrawal of funds by someone other than Plaintiff without written or oral authorization for that person to do so, and failure to return the funds once the issue was pointed out.

78.   Moreover, there is no benefit to consumers where Defendant fails to ensure use of one of its card by the owner of the card, and fails to return money to a consumer who has had their card improperly used after the improper use is brought to Defendant's

attention. Thus, the injury suffered by Plaintiff is not outweighed by any countervailing benefits to consumers.

79.    Finally, the injury suffered by Plaintiff is not an injury that these consumers could reasonably have avoided since Plaintiff never received the physical card itself so she was unaware of the transactions happening on her card, and Defendant failed to prevent withdrawal of funds by someone other than Plaintiff without written or oral authorization for that person to do so, and failed to return the funds once the issue was pointed out.

80.    As such, Defendant took advantage of Defendant's position of perceived power in order to avoid returning Plaintiff's money to her.

81.    The injury suffered by Plaintiff is not an injury which Plaintiff could reasonably have avoided.

82.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

### **Fraudulent**

83.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

84.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a

15

§ 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

85.    Here, not only was Plaintiff likely to be deceived, but Plaintiff actually was deceived by Defendant.  Such deception is evidenced by the fact that Defendant failed to prevent withdrawal of funds by someone other than Plaintiff without written or oral authorization for that person to do so, and failed to return the funds once the issue was pointed out.

86.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200

WHEREFORE, Plaintiff, MARIA RODRIGUEZ, by and through her attorneys, respectfully pray for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

     a.    All actual compensatory damages suffered; and

     b.    Any other relief deemed appropriate by this Honorable Court.

## V.    <u>JURY DEMAND</u>

87.    Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  March 20, 2024

                           Respectfully submitted,
                           **TATAR LAW FIRM, APC**

                           By: *<u>/s/ Stephanie R. Tatar</u>*
                           Attorney for Maria Rodriguez and
                           Daniella Duran